# EXHIBIT A

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Amerifactors Financial Group, LLC Petition for | ) | |
| Expedited Declaratory Ruling | ) | |
| | ) | |
| Rules and Regulations Implementing the | ) | CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | ) | |
| | ) | |
| Junk Fax Protection Act of 2005 | ) | CG Docket No. 05-338 |

**DECLARATORY RULING**

**Adopted:  December 9, 2019**                                     **Released: December 9, 2019**

By the Chief, Consumer and Governmental Affairs Bureau:

## I.     INTRODUCTION

       1.        The Telephone Consumer Protection Act (TCPA), as amended by the Junk Fax Protection Act (JFPA), prohibits any person from sending an unsolicited advertisement to a "telephone facsimile machine."[1]  In relevant part, a "telephone facsimile machine" is defined as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[2]  Construing these terms in 2003, the Commission has made clear that the prohibition does not extend to facsimile messages "sent as email over the Internet."[3]

       2.        In 2017, Amerifactors filed a petition for declaratory ruling asking the Commission to clarify that faxes sent to "online fax services" are not faxes sent to "telephone facsimile machines."[4]  An online fax service is "a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities"[5] that allows users to "access 'faxes' the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email."[6]

       3.        By this declaratory ruling, we make clear that an online fax service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to

---

[1] 47 U.S.C. § 227(b)(1)(C).

[2] *Id.* § 227(a)(3).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket 02-278, 18 FCC Rcd 14014, 14133, para. 200 (2003) (*2003 TCPA Order*).

[4] *See Petition for Expedited Declaratory Ruling of Amerifactors Financial Group, LLC*, CG Docket Nos. 02-278, 05-338, at 2 (filed July 13, 2017) (*Petition*).

[5] *Id.* at 2 n.4.

[6] *Id.* at 1.

transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" is not a "telephone facsimile machine" and thus falls outside the scope of the statutory prohibition.

## II.    BACKGROUND

4.       In relevant part, the TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."[7]  The TCPA defines the term "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[8]

5.       In 2003, the Commission made clear that the TCPA's prohibition does not extend to facsimile messages "sent as email over the Internet."[9]  In doing so, the Commission made clear that where the equipment itself could transcribe a fax onto paper—such as a personal computer attached to printer and modem—it would remain within the scope of the statute.[10]  The Consumer and Governmental Affairs Bureau reiterated this finding in the *Westfax Declaratory Ruling*, finding that the "efaxes" at issue in that case were received by equipment that had "the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper.'"[11]

6.       In 2017, Amerifactors filed the present petition for declaratory ruling regarding "online fax services."[12]  Amerifactors argues that (1) online fax services do not fit within the plain meaning of the TCPA's prohibition on conventional faxes; (2) online faxes do not result in the type of harm that Congress sought to avoid in the TCPA; (3) a declaratory ruling here would be a first step toward curbing abusive litigation practices; and (4) applying the TCPA to faxes received on a device other than a telephone facsimile machine would be an impermissible restriction on commercial speech in violation of the First Amendment.[13]

7.       The Bureau sought comment on Amerifactors' *Petition*.[14]  Several entities and individuals filed comments.  The majority of commenters support the *Petition*.  In general, these commenters reiterate the arguments made in the *Petition*, including that the TCPA's prohibitions do not apply to faxes received via an online fax service because that technology does not constitute a telephone facsimile machine.[15]  Five commenters oppose Amerifactors' petition, one of which is the plaintiff in an

---

[7] 47 U.S.C. § 227(b)(1)(C).

[8] *Id.* § 227(a)(3).

[9] *2003 TCPA Order*, 18 FCC Rcd at 14133, para. 200.

[10] *Id.*

[11] *See Westfax, Inc.*, CG Docket Nos. 02-278 and 05-338, Declaratory Ruling, 30 FCC Rcd 8620, 8623, para. 9 (CGB 2015) (*CGB Westfax Declaratory Ruling*).

[12] *Petition* at 2.

[13] *Id.* at 10-19.

[14] *See Consumer and Governmental Affairs Bureau Seeks Comment on Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling Under the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 02-278, 05-338, Public Notice, 32 FCC Rcd 5667 (2017).

[15] *See, e.g.*, Amsterdam P&L Comments at 3; Legal & General America Comments at 2-3.

ongoing class action lawsuit against Amerifactors.[16]  In general, these commenters argue that faxes sent to fax servers are subject to the TCPA's prohibitions, and that the time and resources expended to review faxes causes harm even with online fax services.[17]  In addition, Career Counseling, the plaintiff in the underlying TCPA litigation against Amerifactors, argues that a declaratory ruling is procedurally inappropriate in this instance as the *Petition* raises no controversy or uncertainty to be resolved.[18]

## III.    DISCUSSION

8.       Based on the record, including a great deal of information on the nature and operations of current online fax services, we grant Amerifactors' request for declaratory ruling.  To the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the language of the TCPA and our precedent make clear that service is not a "telephone facsimile machine" and is thus outside the scope of the statutory prohibition.  Our clarification is limited to an analysis of online fax services, as informed by the current record, and does not prejudge whether we would arrive at the same conclusion for other types of equipment and services.

9.       As an initial matter, we find sufficient controversy or uncertainty exists to justify issuing a declaratory ruling as set out in section 1.2 of our rules.[19]  Although Career Counseling notes that Amerifactors makes no direct claim in its petition that any person received its faxes through an online fax service, Amerifactors indicated to the court in the underlying litigation that it "believes many, if not the majority of the alleged faxes at issue" were received by, and thus sent to, an online fax service.[20]  In addition, the issue Amerifactors raises extends beyond the parties involved in the current litigation, as evidenced by several commenters that support clarification of this issue.[21]

10.      Turning to the merits, the TCPA's language demonstrates that Congress did not intend the statute's prohibition to apply to faxes sent to equipment other than a telephone facsimile machine.  Specifically, the language of the statute proscribes sending a fax only to a "telephone facsimile machine."[22]  In contrast, Congress made clear that the proscription applies when such a fax is sent from other devices as well—specifically, an unsolicited facsimile advertisement can originate on any of three types of equipment:  a "telephone facsimile machine," a "computer," or any "other device."[23]

---

[16] *See* Barry Comments; Biggerstaff Comments; Career Counseling Comments; Shaw Comments; Sutton Comments; *see also Career Counseling, Inc. v. Amerifactors Fin. Group, LLC*, No. 16-cv-0313-JMC (D.S.C.) (stayed pending a Commission decision).

[17] *See, e.g.,* Career Counseling Comments at 1-6; Barry Comments at 1-2.

[18] *See* Career Counseling Comments at 8.

[19] *See* 47 CFR § 1.2.

[20] Career Counseling Comments at 8, Exh. A (citing Amerifactors Mem. Supp. Mot. Stay at 2-3).

[21] *See, e.g.,* ABA Comments at 2; Amsterdam P&L Comments at 1-2; Jefferson Business Comments at 1; Legal & General Comments at 4.

[22] 47 U.S.C. § 227(b)(1)(C); *see also Petition* at 11-12 (citing various cases holding that "where Congress includes particular language in one section of the statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"); Amsterdam P&L Comments at 3; Brinker Comments at 2; Legal & General America Comments at 2-3.  Our decision is limited to online fax services, as described in the current record.  We therefore do not address the possibility that personal computers or other devices might be subject to the TCPA's protections if they essentially function as "telephone facsimile machines," including causing the consumer harms we discuss here.

[23] 47 U.S.C. § 227(b)(1)(C).

11.     Next, we turn to whether an online fax service is a "telephone facsimile machine." As described in the record, a fax received by an online fax service as an electronic message is effectively an email. Under our precedent, faxes "sent as email over the Internet" are not subject to the TCPA.[24] Faxes sent to online fax services via an attachment that the consumer can delete without printing are effectively the same as "email sent over the Internet."[25] Consumers can manage those messages the same way they manage email by blocking senders or deleting incoming messages without printing them. We also understand that an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so. As such, an online fax service is plainly not "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." Accordingly, under the plain terms of the Act, an online fax service is not a "telephone facsimile machine" and a fax sent to one is not "an unsolicited facsimile advertisement" prohibited by the TCPA.

12.     What is more, we agree with commenters that faxes sent to online fax services do not cause the specific harms to consumers Congress sought to address in the TCPA.[26] The House Report on the TCPA makes clear that the facsimile provisions of the statute were intended to curb two specific harms: "First, [a fax advertisement] shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."[27] The record is clear that faxes sent to online fax services do not pose these harms and, in fact give consumers tools such as blocking capabilities to control these costs.[28] Specifically, we find that the advertiser cost-shifting that Congress sought to prevent, such as the use of a recipient's paper and ink, is not a factor with online fax services. The House Report on the TCPA explained in 1991 that fax machines were "designed to accept, process, and print *all* messages which arrive over their dedicated lines."[29]

13.     By contrast, the record here confirms that online fax services hold inbound faxes in digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment and has the option to view, delete, or print them as desired.[30] Faxes sent to online fax services use paper and ink only when the recipient *chooses to* print it using their own separately provided equipment. Neither is Congress' concern about junk faxes occupying the recipient's fax machine so it is unavailable for other transmissions an issue with online fax services. These services can handle multiple simultaneous incoming transmissions and thus receipt of any one fax does not render the service unavailable for others.[31] In short, online fax services differ in critical ways from the traditional faxes sent

---

[24] *See 2003 TCPA Order*, 14 FCC Rcd at 14133, para. 200.

[25] *Id.*

[26] *See Petition* at 16-19; ABA Comments at 1-2; Amsterdam P&L Comments at 4; Legal & General America Comments at 4-5.

[27] H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991).

[28] *See* Letter from Steven A. Augustino, Counsel for Amerifactors to Marlene H. Dortch, FCC, CG Docket No. 02-278 (dated Sept. 6, 2019); Amerifactors Reply Comments at 13-14; *Petition* at Exh. 2 (noting those online fax services that provide a blocking option). Even where online fax services charge consumers for individual faxes, providers offer functionalities that enable consumers to manage unwanted messages, including the ability to block senders or options to purchase "receipt only" packages in which no additional cost is incurred for receipt of transmissions. *See, e.g.*, Amerifactors Reply Comments at 13-14 (discussing various online fax service plans).

[29] H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991) (emphasis added).

[30] *See, e.g.*, *Petition* at 13; ABA Comments at 1-2; Legal & General America Comments at 4-5.

[31] *Petition* at 18 (noting that because a fax reaches the user of an online fax service via email there is typically no occupation of the user's facilities).

to telephone facsimile machines Congress addressed in the TCPA.[32]  These faxes are more accurately characterized as faxes sent to a "computer" or "other device," and not a "telephone facsimile machine."[33]

14.     We disagree with those commenters who suggest that other consumer inconveniences necessitate that all computers and devices capable of being sent faxes be deemed telephone facsimile machines.[34]  *For one*, we see no discretion contained in the statute to expand the meaning of a telephone facsimile machine beyond its defined scope.  *For another*, the more general harms that such commenters point to—such as time spent monitoring unwanted faxes stored by online fax services—are more generalized harms that go beyond the specific harms Congress identified in enacting the TCPA.[35]

15.     We also disagree with those that suggest this case is governed by the *Westfax Declaratory Ruling*.  That decision focused on whether the mere conversion of a conventional fax to email at some point in the transmission chain removed the fax from the TCPA's reach—and found that it did not.[36]  And based on a limited record, it assumed that the "efax" in question was sent to a computer with an attached fax modem that had the capacity to print the fax, as required by statute.[37]  That decision did not consider the online fax services that have no such capacity at issue here.

16.     Having granted Amerifactors the relief it requests as described above, we decline to address its other arguments, including the claim that applying the TCPA prohibition to faxes sent to online fax services would violate the First Amendment.

## IV.    ORDERING CLAUSES

17.     For the reasons stated above, IT IS ORDERED, pursuant to sections 1-4 and 227 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, sections 1.2 and 64.1200 of the Commission's Rules, 47 CFR §§ 1.2, 64.1200, and the authority delegated in sections 0.141 and 0.361 of the Commission's rules, 47 CFR §§ 0.141, 0.361, that the Petition for Expedited Declaratory Ruling filed by Amerifactors Financial Group, LLC on July 13, 2017, IS GRANTED TO THE EXTENT DESCRIBED HEREIN.

---

[32] For these reasons, we disagree with those commenters who suggest that granting Amerifactors' request will result in consumer harms that Congress intended to protect under the TCPA.  *See, e.g.*, Biggerstaff Reply Comments at 9; Sutton Comments at 1.

[33] We agree with Amerifactors that interpreting the TCPA to mean that every "computer" or "other device" is a telephone facsimile machine, merely because it could be connected to a printer, directly or indirectly, would be overly broad and result in the kind of impermissibly expansive application of the TCPA that the D.C. Circuit recently rejected.  *See* Letter from Steven A. Augustino, Counsel for Amerifactors to Marlene H. Dortch, FCC, CG Docket No. 02-278 (dated Feb. 22, 2019).

[34] Career Counseling Comments at 6-8 (noting time spent opening, reviewing and deleting messages); Shaw Comments at 1 (faxes emailed to the recipient take the recipient's time); Sutton Comments at 1.

[35] *See, e.g.*, *CGB Westfax Declaratory Ruling*, 30 FCC Rcd at 8624, para. 12; *2003 TCPA Order*, 18 FCC Rcd at 14134, para. 202.

[36] *CGB Westfax Declaratory Ruling*, 30 FCC Rcd at 8623-24, para. 10.

[37] *See id.* at 8623, para. 9.

18.     IT IS FURTHER ORDERED that this Declaratory Ruling shall be effective upon release.


FEDERAL COMMUNICATIONS COMMISSION


Patrick Webre
Chief
Consumer and Governmental Affairs Bureau

**Appendix**

**List of Commenters**

| Commenters | Abbreviation |
|---|---|
| American Bankers Association | ABA |
| Amerifactors Financial Group, LLC | Amerifactors |
| Amsterdam Printing & Litho | Amsterdam P&L |
| Barry, Peter/Barry/Helwig, LLC | Berry |
| Robert Biggerstaff | Biggerstaff |
| Cynthia Brinker | Brinker |
| Career Counseling, Inc. | Career Counseling |
| David Cover | Cover |
| Johnny Daciolas | Daciolas |
| Leslie Delahoya | Delahoya |
| Erika Eaton | Eaton |
| Stephanie Elizabeth | Elizabeth |
| Gary Evans | Evans |
| Michael Friend | Friend |
| Javier Gonzalez | Gonzalez |
| Mark Gregg | Gregg |
| Joe Horner | Horner |
| Kim Jarreau | Jarreau |
| Jefferson Business Council | Jefferson Business |
| Gary Lafountain | Lafountain |
| Legal & General America, Inc. | Legal & General America |
| David Lloyd | Lloyd |
| Derek Mannion | Mannion |
| Christopher Robert | Robert |
| Lalo Robles | Robles |
| John Shaw | Shaw |
| Jason Stephens | Stephens |
| Jimmy Sutton | Sutton |
| Mark Valencia | Valencia |
| Westfax, Inc. | Westfax |