UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAISY, INC., a Florida corporation,
individually and as the representative of
a class of similarly-situated persons

        Plaintiff,

v.                                                                             Case No.:   2:20-cv-17-FtM-38MRM

MOBILE MINI, INC.,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Mobile Mini, Inc.'s Motion for Summary Judgment (Doc. 38), Plaintiff Daisy, Inc.'s response in opposition (Doc. 58), and Mobile Mini's reply (Doc. 70).  The Court grants the Motion in part.

## **BACKGROUND**

This is a junk fax case.  Mobile Mini sent one unwanted ad to Daisy's fax number.  Daisy, however, receives faxes through an online service ("Vonage").  Vonage acts as a sort of middleman, collecting then sending Daisy its faxes attached to e-mails.  The e-mail at issue read, "You have received a document.  Sender's Caller ID: Restricted Date/Time: 12/18/2019 04:49:00 PM   Number of Pages: 1."  (Doc. 38-2 at 2).  And attached as a PDF was the advertisement below:

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.



(Doc. 1-1 at 2).

Daisy brought a class-action Complaint for violating the Telephone Consumer Protection Act ("TCPA"). (Doc. 1). Mobile Mini moves for summary judgment on the merits and for lack of standing. As a threshold jurisdictional issue, the Court must consider standing first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). Because the analysis ends there, the Court need not reach the merits. *Gardner v. Mutz*, 962 F.3d 1329, 1338-40 (11th Cir. 2020).

**LEGAL STANDARD**

The parties dispute whether the motion to dismiss or summary judgment standard should apply. A motion to dismiss under Rule 12(b)(1) challenges a court's subject-matter jurisdiction. Under Rule 56(a), summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

2

Given the facts and briefing, the result is the same regardless of which applies. Each side offers extrinsic evidence, so the jurisdictional challenge is a factual attack if Rule 12(b)(1) controls. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Under either Rule 56 or 12(b)(1) (on a factual challenge), the Court considers matters outside the pleadings. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003). There are differences between those standards. *Odyssey Marine Exp., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). For instance, a 12(b)(1) factual attack, which Daisy argues for, gives a district court fact-finding power it does not possess at summary judgment. *Morrison*, 323 F.3d at 925. Likewise, "the manner and degree of evidence required at the successive stages of the litigation" applies to standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At summary judgment, therefore, a plaintiff "can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (alteration accepted, internal quotation marks omitted, and citation omitted). Even so, the parties here agree on all the relevant jurisdictional facts, which are separate from the merits, and simply dispute whether Daisy has Article III standing. So the result here is the same under either standard: dismissal without prejudice because Daisy lacks standing. *See Gardner*, 962 F.3d at 1343 & n.11; *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007).

**ANALYSIS**

Federal courts can only hear "Cases" or "Controversies" U.S. Const. art. III, § 2. From that limitation, the standing doctrine grew. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a

3

lawsuit in federal court." *Id.* And in the process, standing ensures courts respect the separation-of-powers boundaries set out in the Constitution. *Clapper*, 568 U.S. at 408.

To have standing, every plaintiff must show injury, causation, and redressability. *Lujan*, 504 U.S. at 560-61. But those three simple words are sometimes trickier to apply than it might seem, thrusting standing into the legal limelight these days. The difficulty is sometimes most apparent when it comes to "the 'first and foremost' of standing's three elements"—injury in fact. *See Spokeo*, 136 S. Ct. at 1547 (alteration accepted) (quoting *Steel Co.*, 523 U.S. at 103).

Actionable injury in fact means plaintiff experienced "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. This injury must be (1) "concrete and particularized" and (2) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citation omitted). Only concreteness is at issue. An injury is concrete if it is "*de facto*" (i.e., "it must actually exist" and be "real," "not 'abstract'"). *Spokeo*, 136 S. Ct. at 1548 (citations omitted). The "bare procedural violation" of a statute, however, is not enough, even if Congress prescribed a cause of action. *Id.* at 1549. In other words, the Supremes "rejected the premise . . . that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Frank v. Gaos*, 139 S. Ct. 1041, 1045 (2019) (quoting *Spokeo,* 136 S. Ct. at 1549). So regardless of any TCPA violation, Daisy must show Mini Mobile's fax caused a concrete harm. *Spokeo,* 136 S. Ct. at 1549.

Importantly, it is undisputed Daisy received the fax by e-mail, not a fax machine. That distinguishes this case from others where the Eleventh Circuit found concrete injuries based on plaintiffs' occupied fax machines and their lines or imposed printing

4

costs.[2] *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252-53 (11th Cir. 2015); *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017). Likewise, almost every junk fax case Daisy cites differs because such injuries were present. If this were a regular fax case (like those situations) Daisy would have standing. *See, e.g.*, *Bobo Drug's, Inc. v. Fagron, Inc.*, 314 F. Supp. 3d 1240, 1243-44 (M.D. Fla. 2018). But this case is different.

Because Daisy cannot claim those injuries, it alleges only an intangible harm of wasted time. Specifically, a Daisy employee wasted one minute reviewing the fax, deciding it was junk, and dragging the e-mail to his spam folder. (Doc. 60). And the employee could have used that minute working, says Daisy.[3] While tangible injuries are "easier to recognize," intangible injuries can be concrete too. *Spokeo*, 136 S. Ct. at 1549.

To be sure, the Eleventh Circuit clarified wasted time can be a concrete harm sometimes. *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019). For that proposition, it cited two previous cases and explained a "concrete harm from wasted time requires, at the very least, more than a few seconds." *Id.* And *Salcedo* emphasized the analysis is "qualitative, not quantitative." *Id.* In the end, however, *Salcedo* held general allegations of wasted time from receiving an unwanted text message do not amount to a concrete injury. Daisy contends *Salcedo* does not apply because it outlined the employee's sixty wasted seconds. This position, however, is a distinction without a difference. It boils down to arguing the *quantitative* difference in seconds distinguishes

---

[2] While the Complaint alleges those injuries for Daisy and potential class members (Doc. 1 at 12-13), it is undisputed Daisy did not suffer those harms. Even if potential class members could have standing on that basis, Daisy must have standing itself to maintain this suit. *JW by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1272 (11th Cir. 2018).

[3] The Court notes Daisy does not contend it pays for Vonage by the fax. And Daisy's Vonage bill, which Mobile Mini offers, does not reflect per-fax charges. (Doc. 38-2 at 3).

*Salcedo*. Yet there is no *qualitative* difference in harm between reading then answering an unwanted text and reviewing then deleting a junk fax sent by e-mail. The only difference is the few seconds longer that Daisy's employee said it took. But the quality of harm—not the counting of seconds—decides concreteness. *Id.*

The case Daisy relies on to distinguish *Salcedo* does not fit. *Persichetti v. T-Mobile USA, Inc.*, No. 1:19-CV-02424-JPB, 2020 WL 4811003, at \*2-3 (N.D. Ga. Aug. 17, 2020). There, the allegations were not limited to general wasted time reviewing a few texts. Rather, that plaintiff took other actions reinforcing the conclusion the wasted time added up to a concrete injury. For instance, plaintiff changed his phone settings, called defendant's customer service, and even e-mailed defendant's CEO. In other words, the quality of the harm was different than it is here.

Applying *Salcedo*, many Southern District decisions dismissed unwanted text cases for no standing where the only identified injuries were short amounts of wasted time. *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1069-71 (S.D. Fla. 2020) (holding plaintiff lacked standing for wasted time in reading five text messages for a few seconds each).[4] All those cases, including *Salcedo*, involve unwanted texts. But this is case concerns a different intangible harm from a junk fax received by e-mail. The parties and Court only found two cases on TCPA standing for faxes received via e-mail. One occurred long before *Spokeo*. *J2 Global Commc'ns, Inc. v. Protus IP Sols.*, No. 06–00566

---

[4] *Perez v. Golden Tr. Ins.*, No. 19-24157-Civ-COOKE/GOODMAN, 2020 WL 3969277, at \*1-2 (S.D. Fla. July 6, 2020) (same for one minute of reviewing texts, along with over ten minutes researching defendant and retaining counsel); *Fenwick v. Orthopedic Specialty Inst., PLLC*, No. 0:19-CV-62290-RUIZ/STRAUSS, 2020 WL 913321, at \*5 (S.D. Fla. Feb. 4, 2020) (same for fifteen seconds reading texts and time spent researching defendant); *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, No. 20-60734-CIV-ALTMAN/Hunt, 2020 WL 3977142, at \*7-8 (S.D. Fla. July 14, 2020) (holding plaintiff lacked standing when complaint lacked any allegations of wasted time); *see also Jenkins v. Simply Healthcare Plans, Inc.*, No. 20-22677-CIV-ALTONAGA/Goodman, 2020 WL 4932105, at \*2 (S.D. Fla. Aug. 17, 2020) (holding allegations of a single unwanted text, without more, insufficient).

DDP (AJWx), 2010 WL 9446806 (C.D Cal. Oct. 1, 2010).  The other is unpersuasive. *Whiteamire Clinic, P.A. Inc. v. Cartridge World N. Am., LLC*, No. 1:16CV226, 2017 WL 561832 (N.D. Ohio Feb. 13, 2017).  *Whiteamire* held plaintiff had standing.  In doing so, it relied on a pre-*Spokeo*, Sixth Circuit decision, which bound that court, but doesn't bind this one.  Because *Whiteamire* relied on that opinion, it did not analyze the alleged harm under *Spokeo*.  And given the substantial disagreement by courts in this Circuit on a general wasted time injury, the Court will not blindly follow *Whiteamire*.[5]

Given the absence of controlling precedent on standing, the Court turns to *Spokeo*'s inquiry for intangible injuries.  *Salcedo*, 936 F.3d at 1168.  "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Spokeo*, 136 S. Ct. at 1549.  Here, neither leans toward a concrete injury.

Up first is history.  Courts should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.*  In conducting this analysis, courts must take care because plaintiffs need not prove they could recover on a common law cause of action.  *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958 (8th Cir. 2019).  "In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy.  Congress's power is greater than that."  *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020); *see also*

---

[5] To the extent that Daisy relies on a pre-*Spokeo* Seventh Circuit case, it is distinguishable.  *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. 2013).  That case said, "Even a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk."  *Id.* at 684.  That statement was dicta.  The case addressed whether individual issues swamped class certification, not standing.  What is more, *Salcedo* specifies plaintiffs cannot rely on generalized allegations of wasted time alone, which *Holtzman* implied.  *Salcedo*, 936 F.3d at 1167-68.  *Holtzman* is thus inapposite.

7

*Spokeo*, 136 S. Ct. at 1549 (noting Congress can "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law" (alteration accepted and citation omitted)). While a "close relationship" does not demand a viable claim, "it does require that newly established causes of action protect essentially the same interest that traditional causes of action sought to protect." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017).

Neither party attempts to draw analogies to common law causes of action, which *Spokeo* demands. Maybe it's because history knew no parallel for the harm of wasted time spent reviewing a junk fax received by e-mail. To explain why, the Court takes possible historical harms in three parts.

First, trespass to chattels or conversion is like injuries caused by other junk faxes, but not this one. Trespass to chattels is the intentional interference with someone's property through dispossession, use, or intermeddling. Restatement (Second) of Torts, § 217 (Am. Law Inst. 1965). Conversion is such a serious, intentional interference with another's property (by dominion or control) that payment of full value is necessary. *Id.* § 222A. These torts are unrelated to the harm alleged here because the fax did not deprive Daisy of using its fax machine or computer. See *Salcedo*, 936 F.3d at 1171-72. The ad went to Vonage's fax machine (if any) and receiving an e-mail does not interfere with someone using a computer. So unlike *Palm Beach* and *Florence Endocrine*, Mini Mobile did nothing resembling trespass to, or conversion of, Daisy's property by occupying a machine, tying up the fax line, or printing the ad. In short, the alleged harm of wasted time is not analogous.

Second, invasion of privacy does not apply here. Even if some plaintiffs could analogize to that group of suits for this type of fax—a question the Court need not decide—Daisy cannot. Daisy is a corporation. In tort, those entities have never been understood to have privacy rights beyond their publicity. *FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011) ("[T]reatises in print around the time that Congress drafted the exemptions at hand reflect the understanding that the specific concept of 'personal privacy,' at least as a matter of common law, did not apply to corporations."); Restatement (Second) of Torts, § 652I (Am. Law. Inst. 1977) ("Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded."); *id.* at cmt. c ("A corporation, partnership or unincorporated association has no personal right of privacy."). Thus, Daisy was not among the category of individuals who could seek redress at common law, so invasion of privacy does not bear a close relationship to Daisy's harm. *See Fauley v. Drug Depot, Inc.*, 204 F. Supp. 3d 1008, 1012 (N.D. Ill. 2016) ("[B]ecause businesses do not have privacy interests in seclusion or solitude . . . [plaintiff's] allegation that the fax, that was sent to his business, constitutes an invasion of privacy does not allege injury as required under Article III.").

And third, trespass to land and nuisance are inapplicable. Trespass to land is an intentional invasion onto another's land. Restatement (Second) of Torts, § 158 (Am. Law. Inst. 1965). Nuisance is the unreasonable invasion of someone's use and enjoyment of land, "involving more than slight inconvenience or petty annoyance."[6] Restatement (Second) of Torts, § 822 & cmt. g (Am. Law. Inst. 1979). These are causes of action

---

[6] At common law, nuisance was not what people colloquially use the word for today (for instance, calling the annoying neighbor a nuisance). For this part of the analysis, the Court relies on the historical cause of action for nuisance, which was different from neighbors who mow their lawns early on a Saturday.

9

protecting land, not chattels. Even leaving that aside, where relevant the statute protects fax machines and their lines. Congress prohibited sending unwanted ads from fax machines, computers, or other devices *to a fax machine*, but it conspicuously left out faxes sent *to computers or other devices*. 47 U.S.C. § 227(b)(1)(C). Thus, neither common law claim is like the harm Daisy alleged.

In short, Daisy's alleged harm for one minute of wasted time resembles no historical cause of action. Rather, this is "the kind of fleeting infraction upon personal property that tort law has resisted addressing." See *Salcedo*, 936 F.3d at 1172. And it is "more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face" than a harm conferring Article III standing. *Id.*

Next, the Court turns to congressional judgment. While not controlling, Congress' judgment is "instructive and important" because it "is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1549. Yet the existence of a statutory "cause of action does not affect the Article III standing analysis." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020). There must be "a concrete injury even in the context of a statutory violation." *Spokeo,* 136 S. Ct. at 1549. Congressional judgment does not support Daisy's contention it suffered a concrete injury. While Daisy points to nonbinding, distinguishable cases, the Court looks at what Congress said.

Again, the statute prohibits unwanted ads sent from a fax machine, computer, or other device to a fax machine. 47 U.S.C. § 227(b)(1)(C). While Congress could have extended that prohibition to faxes no matter how they are received, it did not. So there is no indication from the statutory text that Congress sought to protect against the harm of wasted time spent reviewing faxes received by e-mail.

Likewise, Congress made no findings—zero, zip, zilch—related to the harms it sought to prevent by prohibiting junk faxes.[7]  Various cases make broad statements lumping faxes in with prohibited telemarketing calls.  See *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).  Yet *Salcedo* cautioned against reliance on such a "broad overgeneralization of the judgment of Congress."  936 F.3d at 1170.  Of course, the TCPA barred junk faxes.  But Congress' findings did not mention them.  Mostly, the findings concerned telemarketing calls to the home.  Pub. L. 102-243, §2(6) (1991) ("Congress finds that: . . . Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers."); *id.* §2(10) ("Evidence compiled by the Congress indicated that residential telephone subscribers consider automated or prerecorded telephone calls . . . to be a nuisance and an invasion of privacy."); *id.* §2(12) ("Banning such automated or prerecorded telephone calls to the home . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.").  The closest that Congress came to making a finding relevant here follows: "Businesses also have complained to the Congress and the Federal Communications Commission [("FCC")] that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce."  *Id.* § 2(14).  Yet even if this demonstrated judgment on junk faxes sent to a traditional machine, it does not show Congress sought to protect against wasted time spent reviewing faxes received over e-mail.

The legislative history similarly cuts against a concrete harm.  As the Eleventh Circuit noted, "the TCPA's prohibition against sending unsolicited fax advertisements was

---

[7] Courts consider legislative findings and history as part of this analysis without suggesting either play a role in statutory interpretation.  *Salcedo*, 936 F.3d at 1168-69, 1168 n.6.

11

intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data." *Palm Beach*, 781 F.3d at 1252. For support, *Palm Beach* relied on a House Report, which explained the problems with unwanted ads sent by fax:

> Facsimile machines are designed to accept, process, and print all messages which arrive over their dedicated lines. The fax advertiser takes advantage of this basic design by sending advertisements to available fax numbers, knowing that it will be received and printed by the recipient's machine. This type of telemarketing is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.

H.R. Rep. No. 102-317, at 10 (1991). The Senate acknowledged similar complaints: "unsolicited calls placed to fax machines . . . often impose a cost on the called party (fax messages require the called party to pay for the paper used . . .)." S. Rep. No. 102-178, at 2 (1991). Neither concern is applicable here. And nowhere within the legislative history is any indication that Congress was concerned with anything like an employee spending a minute reviewing a junk fax attached to an e-mail.

Congressional silence may also be instructive. *Salcedo*, 936 F.3d at 1169 ("We take seriously the silence of that political branch best positioned to assess and articulate new harms from emerging technologies."). Here, Washington's silence is deafening. With the Junk Fax Prevention Act of 2005, Congress amended the TCPA, but neither included faxes received by e-mail nor made findings identifying the type of harm Daisy alleges. Pub. L. 109-21 (2005). This amendment codified an established business relationship exception to prohibiting junk faxes and set out a procedure for ceasing further communication upon request. *Id.* Despite being aware of complaints over "the opportunity costs of 'time spent reading and disposing of faxes,'" Congress passed the

bill without expressing any intent to address those harms.  S. Rep. No. 109-76, at 3 (2005).  This followed Congress passing the "CAN-SPAM Act," which amended part of the TCPA irrelevant here.  Pub. L. 108-187, § 12 (2003).  Notably, however, CAN-SPAM legislated on the communication most analogous to the one Daisy received: junk e-mail.  Unlike the TCPA—which does not prohibit spam e-mails—CAN-SPAM specifically tried to rein in that practice.  In fact, the alleged injury here is precisely what Congress sought to address through CAN-SPAM.  See id. § 2(a)(3) ("The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, *or for the time spent accessing, reviewing, and discarding such mail*, or for both." (emphasis added)); id. § 2(a)(6) ("The growth in unsolicited commercial electronic mail imposes significant monetary costs on . . . businesses . . . that carry and receive such mail, as there is a finite volume of mail that such . . . businesses . . . can handle without further investment in infrastructure.").  But tellingly, Congress never amended the TCPA to account for those intangible harms suffered from faxes received over e-mail.

And finally, without deferring to FCC, regulatory interpretation of the TCPA buttresses a conclusion the harm alleged here is not concrete.  It is congressional—not FCC—judgment the Court relies on most.  Salcedo, 936 F.3d at 1169.  Still, as the agency tasked with promulgating TCPA regulations, FCC interpretation is worth something.  See 47 U.S.C. §§ 227(b)(2), 154(a).  Recent FCC rulings clarify its position that Daisy's alleged harm is not among the category of injuries Congress intended to remedy:

> What is more, we agree with commenters that faxes sent to online fax services do not cause the specific harms to consumers Congress sought to address in the TCPA. . . . Specifically, we find that the advertiser cost-shifting that

13

> Congress sought to prevent, such as the use of a recipient's paper and ink, is not a factor with online fax services. . . . Neither is Congress' concern about junk faxes occupying the recipient's fax machine so it is unavailable for other transmissions an issue with online fax services.

*In re Amerifactors Fin. Grp. LLC Pet. for Expedited Declaratory* Ruling, No. 02-278, 05-338, 2019 WL 6712128, at *3-4 (2019). Just a few weeks ago, FCC reaffirmed that interpretation—"Further, we reiterate that transmissions that are effectively email do not implicate the consumer harms Congress sought to address in the TCPA, such as tying up phone/fax lines and the unnecessary use of paper and toner/ink from automatic printing." *In re Joseph T. Ryerson & Son, Inc. Pet. for Expedited Declaratory Ruling*, No. 02-278, 05-338, 2020 WL 5362216, at *4 (2020).

At bottom, it is clear Congress did not view one wasted minute spent reviewing a junk fax received through e-mail as a concrete injury.

Having considered both history and congressional judgment, the Court concludes Daisy's alleged harm does not satisfy Article III's injury-in-fact requirement. Because Daisy has no standing, the Court lacks jurisdiction and must dismiss without prejudice. *Gardner*, 962 F.3d at 1343 & n.11.

Accordingly, it is now

**ORDERED:**

(1) Defendant's Motion for Summary Judgment (Doc. 38) is **GRANTED in part**.

(2) Plaintiff's Complaint (Doc. 1) is **DISMISSED without prejudice** for lack of standing.

(3) The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 24th day of September 2020.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record